**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **CRIMINAL NO. 2:19cr104** |
| **v.** ) | |
| ) | |
| **JOSEPH M. CHIANESE,** ) | |
| ) | |
| **Defendant.** ) | |

## POSITION OF THE UNITED STATES REGARDING SENTENCING

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Randy Stoker, Assistant United States Attorney, offers this position paper regarding the appropriate sentence in this case. The defendant has entered a guilty plea and has accepted responsibility for his actions. However, he has raised an objection to the two-level aggravating role enhancement applied to him. The United States concurs with the enhancement set forth in the Presentencing Investigation Report (PSR) and therefore disagrees with the defendant's position. The government recommends a sentence within the guideline range of 18 to 24 months' imprisonment and a three-year period of supervision.

**I. Procedural Background**

On June 19, 2019, Defendants JOSEPH M. CHIANESE and Juliana L. Schreiber[1] were charged in a multi-count indictment charging them with conspiracy to commit an offense against the United States (18 U.S.C. § 371) and trafficking in counterfeit goods (18 U.S.C. § 2320(a)(1)). CHIANESE was named in the conspiracy count and in two counterfeit goods counts. On August

---

[1] Subsequent to her indictment, Ms. SCHREIBER married co-defendant JOSEPH M. CHIANESE. She now goes by JULIANA L. CHIANESE. Thus, in the plea documents filed in August 2019, her initials appear as "JLC."

14, 2019, CHIANESE pleaded guilty to Count One before United States Magistrate Judge Lawrence R. Leonard, and his plea was accepted.

On December 4, 2019, the United States Probation Office submitted a Presentence Investigation Report (PSR) to the Court. Doc. 37. On December 30, 2019, through counsel, the defendant notified the government and the probation officer that he objected to the two-level aggravating role enhancement. He claims that he and his co-conspirator acted as partners and he was not an organizer, leader, or manager. This issue is addressed below and will have to be resolved at the sentencing hearing on January 10, 2020, at 11 am.

Co-defendant Juliana L. Schreiber is set to be sentenced on January 10, 2020, at 9 am.

## II. The Advisory Sentencing Guidelines

According to the PSR, CHIANESE's total offense level is 15 and his criminal history category is I, which calls for an advisory guideline range of 18 to 24 months in prison. In arriving at the total offense level, the PSR states that the base offense level for this offense is 8, based on the offense of conspiracy and the underlying offense of trafficking in counterfeit goods. See USSG §§ 2X1.1(a), 2B5.3(a); PSR ¶ 40. The base offense level was increased by 8 levels due to a calculated infringement amount of $139,965.79. PSR ¶ 41. The defendant received a two-level enhancement for his leadership role. This adjusted offense level of 18 was reduced by 3 levels based on the acceptance of responsibility provisions of USSG §§ 3E1.1(a) and 3E1.1(b). The government supports the additional one-level reduction under USSG § 3E1.1(b). CHIANESE has a total criminal history score of one, which puts him in criminal history category I. The guidelines call for a period of supervised release of 1 – 3 years.

**III. Defendant's Objection to the Aggravating Role Enhancement**

CHIANESE objects to the two-level enhancement based on his elevated role in the criminal conspiracy. The Sentencing Guidelines state, "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." USSG § 3B1.1(c). This subsection is distinguished, in part, from the three-level and four-level enhancements in that it does not require a showing of five or more participants or the extensiveness of the criminal activity. The threshold requirement is that the defendant exercise some form of leadership role over at least one participant. See USSG § 3B1.1, comment. (n.2).

The Fourth Circuit has upheld a two-level enhancement where a defendant organized the scheme, exercised decision-making authority, and directed the criminal actions of another person. *See United States v. Brown*, 614 Fed.Appx. 632, 636 (4th Cir. 2015); *United States v. Mendez*, 589 Fed.Appx. 642 (4th Cir. 2014) (upholding two-level enhancement where defendant exercised some degree of control over both the operation and the activities of the others involved). To be sure, the key element is directing at least one other person as the court has stated, "[l]eadership over only one other participant is sufficient as long as there is some control exercised." *United States v. Rashwan*, 328 F.3d 160, 166 (4th Cir.2003).

As the PSR points out, the defendant was attributed with the two-level enhancement because he was the supplier of the counterfeit goods, because Schreiber was required to pay him for the items she sold, and because he coached Schreiber on what to say if she was questioned about the goods' authenticity. PSR ¶¶ 17, 19, 36. His role as the local supplier of the counterfeit goods is underscored by the facts that he purchased the goods from Hong Kong (Statement of Facts ¶ 2), he rented the flea market stall, and Schreiber assisted him with the

sales. Statement of Facts ¶ 3. The shipment information obtained from U.S. Customs and Border Protection show that shipments were addressed to CHIANESE. PSR ¶¶ 14, 15. Her statements to law enforcement at the time of the search warrants were consistent in this regard. See PSR ¶ 32 ("Chianese purchases the items and she helps him sell the items" and "Chianese pays for everything.") Text messages show that Schreiber paid the defendant for the items she sold and online sales were done through the defendant's Cash App account. PSR ¶ 36. In one text message exchange, the defendant asked Schreiber if she had paid him for the Ugg boots and cosmetic kits she had sold. PSR ¶ 19. She stated that had not paid him and owed him $65. Id.

CHIANESE also provided direction to Schreiber should she be questioned about the goods. He stated, "I'll tell people all day it's real. Doesn't make a difference. It's all in your head." PSR ¶ 17. When she informed him about the complaints, he reminded her that the relatively few complaints does not compare to all of the successful sales she had made. See PSR ¶ 23.

Here, the facts show that the defendant exercised a significant amount of control over the criminal acts of Schreiber. It is also clear that he was the leader of the scheme in every respect and that Schreiber acted under his direction.

**IV. Position on Sentencing**

In determining the appropriate sentence, the Court is obliged to consider the advisory guideline range as well as the factors set forth in 18 U.S.C. § 3553(a). The applicable guideline range is 18 to 24 months in prison. For the reasons stated below, a sentence of imprisonment within the advisory guideline range and a three-year period of supervised release are appropriate.

A. Nature and Circumstances of the Offense

The defendant and his co-conspirator were engaged in a conspiracy in which they agreed to purchase numerous counterfeit goods from Hong Kong and to sell those goods as genuine goods to persons in the Norfolk and Virginia Beach areas. The types of counterfeit goods included, Yeti beverage containers, Oakley sunglasses, Ray-Ban sunglasses, Ugg boots, and Kylie cosmetic make-up kits, to name a few. The conspirators offered these items for sale via the internet as well as at a local flea market. When advertised via the internet, the goods were presented as genuine, name-brand items. On several occasions, law enforcement officers acting undercover were able to purchase counterfeit items from both of the defendants. The items purchased by law enforcement were then confirmed as counterfeit by an industry representative. Notably, one text message conversation mentioned that one of their fake cosmetic kits caused irritation to a person's eyes.

The defendant was engaged in the trafficking of counterfeit goods before he entered into the conspiracy with Schreiber, which began in August 2017. The PSR notes that a task force officer made contact with the defendant on February 26, 2017. In a conversation with the undercover TFO, Chianese admitted to trafficking in counterfeit items for approximately 18 months. Thus, his criminal activity dates back to at least September 2015. Records from U.S. Customs and Border Protection show that the defendant was sent notices that two shipments to him had been seized as counterfeit contraband in March 2017. In an interview with law enforcement, the defendant admitted to having a shipment of Yeti tumblers seized, but stated that he did not read the seizure notices. PSR ¶ 31.

When a search warrant was executed on the defendant's flea market stall and his residence, agents found approximately 1,000 items that were determined to be counterfeit. Law

enforcement reports document the number of counterfeit items sold by the defendant to the undercover TFO. All of these sales were taken into account to determine the number of counterfeit items sold. To determine the infringement amount attributed to the defendant, the counterfeit goods are valued to be the retail price of the genuine item. Conservatively, the defendant is attributed with an infringement amount of $139,965.79.

      B. History and Characteristics of the Defendant

Defendant CHIANESE, age 26, was born in Virginia Beach and has resided there his entire life. He has an older brother, who also lives in the area. He grew up in a stable household and he maintains close ties with his family. In 2011, he earned his high school diploma from Ocean Lakes High School having graduated with a 3.17 grade point average. Chianese also earned an associate's degree in criminal justice from Tidewater Community College in 2014. In December 2014, he began working as a police officer with the Chesapeake Police Department, but he was terminated approximately one year later. It was found that he was involved in a traffic accident and that he had violated department policy because he was not wearing his seat belt at the time. Apparently, he held other jobs during the time he was with the police department. He reports working at Avis Rental Car from August to November 2015 and as the overnight desk attendant at a motel from 2013 to 2015.

Since November 2018, CHIANESE and Schreiber have operated a real estate investment company called 72019 LLC. The business apparently purchases houses in the local area using funding from private lenders. The houses are rented out and the rental income is used to pay the lenders. Whatever remains is income to the business. The business will soon own ten properties in the local area. Another part of their business is finding renters for other property owners. The business receives a commission ("finder's fee") for their efforts. The defendant and Schreiber

appear to earn a good income and they live within their means. However, the PSR notes that the defendant has not paid federal income tax in the past three years.

### C. Other Relevant Factors

Other relevant factors that the Court must consider are respect for the law, deterrence, and the need for vocational training, medical care, and other correctional treatment. The proliferation of counterfeit goods of all types stifles innovation, suppresses true competition, deceives unwitting consumers, and in some cases allows dangerous products into the public sphere. Thus, for both economic and consumer safety reasons, the sentence should take general deterrence into account. The defendant's lack of respect for the law is evinced by the fact that he ignored the seizure notice sent to him regarding the counterfeit Yeti tumblers. He clearly knew and understood that he was engaging in the sale of counterfeit goods and chose to flout the law in pursuit of personal gain.

## IV. Restitution

Restitution is required in this case. As stated in the PSR, the victims (trademark holders) have submitted a victim impact statement. They are requesting restitution in the amount of $2,991.50, which represents the cost of fees paid to their representative to support this investigation. CHIANESE and Schreiber should be jointly and severally liable for this amount.

## V. Conclusion

Based on the foregoing, the government recommends a sentence within the advisory guideline range and three years of supervised release.

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:     /s/
Randy C. Stoker
Assistant United States Attorney
Virginia State Bar No. 73455
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: Randy.Stoker@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of January 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

James Orlando Broccoletti
Zoby & Broccoletti
6663 Stoney Point S.
Norfolk, VA 23502
Email: james@zobybroccoletti.com

I certify that on this 5th day of January 2020, I caused a true and correct copy of the foregoing Government's Position Regarding Sentencing to be sent to the following:

Sami K. Geurts
U.S. Probation Officer
827 Diligence Drive, Suite 210
Newport News, VA 23606
Email: sami_geurts@vaep.uscourts.gov

                                              /s/
Randy Stoker
Assistant United States Attorney
Virginia State Bar No. 73455
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
Email: randy.stoker@usdoj.gov